JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Ray Perry appeals from his conviction for escape. For the reasons set forth below, defendant's conviction is affirmed, his sentence is vacated and the matter is remanded for resentencing.
 {¶ 2} On March 20, 2002, defendant was indicted for one count of escape in violation of R.C. 2921.34. Defendant pled not guilty and the matter proceeded to a jury trial on September 23, 2002.
 {¶ 3} The state asserted that the charge stemmed from defendant's failure to report to his parole officer, Robert Gentry.
 {¶ 4} Gentry testified that he is a parole officer with the Adult Parole Authority. Gentry explained that parole is a program whereby inmates are released from prison and permitted to serve the remainder of their sentence outside of prison but under state supervision. Parole regulations require a definite one-year period of supervision. If satisfactorily completed, the parolee may receive a final release after this one-year period. When someone is granted parole, the parole authority must approve his or her living arrangements, and if the parolee will be living with others, prospective roommates are informed that the premises may be searched.
 {¶ 5} Gentry next established that on March 30, 1993, defendant was sentenced to five to fifteen years incarceration for felonious assault with specifications; eight to twenty-five years incarceration for aggravated burglary with specifications; and one year incarceration plus three years actual incarceration for carrying a concealed weapon. Defendant was paroled on August 23, 2001, after serving approximately eight years and was to complete the sentence under the supervision of the Adult Parole Authority. His authorized residence at this time was the home of his grandmother.
 {¶ 6} Gentry met with defendant on August 23, 2001, and informed him in writing that parole supervision constitutes a form of "detention" and that if defendant absconded from such supervision, he could be charged with escape. Also on this date, Gentry gave defendant a written list of the conditions of parole which instructed him to keep his parole officer apprised of his residence and place of employment and further advised that if defendant absconded from supervision, he could be prosecuted for the crime of escape. Gentry also outlined a supervision plan which required defendant to call him on the first Tuesday of each month, make an office visit on the third Tuesday of each month, and complete a drug screening at this time. Defendant signed both documents.
 {¶ 7} Defendant and Gentry spoke on the telephone on September 4, 2001, and defendant came to the office for scheduled visits on September 11, 2001, and September 18, 2001. Defendant did not call Gentry or report to his office after that time, however, and on November 19, 2001, Gentry went to the home of defendant's grandmother. No one was home at this time, and Gentry left a card in the door for defendant. On December 5, 2001, Gentry sent defendant a letter instructing him to report to Gentry's office on December 11, 2001. Defendant did not report as directed, and on December 24, 2001, Gentry sent him a second letter, instructing him to report to the office on January 2, 2002. Defendant again failed to report to the parole office and on January 3, 2002, Gentry spoke with defendant's grandmother then obtained an arrest warrant for defendant. On March 11, 2002, Gentry determined that he would pursue a charge of escape in the matter.
 {¶ 8} On cross-examination, Gentry testified that in October 1996, the Revised Code expanded the definition of "detention" to make it possible to prosecute persons who fail to report to their parole officers for the crime of escape.
 {¶ 9} The matter was submitted to the jury and defendant was convicted of the charge. The court sentenced defendant to two years imprisonment and to a maximum term of post-release control. Defendant now appeals and assigns four errors for our review. Defendant's first assignment of error states:
 {¶ 10} "The trial court erred by denying Appellant's motion to dismiss."
 {¶ 11} Within this assignment of error, defendant asserts that because the underlying offense for which defendant was convicted occurred prior to the 1998 amendment of the definition of detention to include parolees, he cannot be convicted of escape.
 {¶ 12} The crime of escape is defined in R.C. 2921.34 which provides:
 {¶ 13} "(A)(1) No person, knowing the person is under detention or being reckless in that regard, shall purposely break or attempt to break the detention, or purposely fail to return to detention, either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence in intermittent confinement."
 {¶ 14} Defendant correctly observes that, prior to October 4, 1996, "detention" was defined to include "supervision by an employee of the department of rehabilitation and correction of a person on any type of release * * * other than release on parole." 146 Ohio Laws, Part IV, 7335; R.C. 2921.01(E).
 {¶ 15} Effective October 4, 1996, R.C. 2921.01(E) was amended to remove the exclusion of parolees from the definition of detention. 146 Ohio Laws, Part II, 2214.
 {¶ 16} Pursuant to R.C. 2967.15(C)(2), however, parolees were excluded from class of persons who could be prosecuted for escape, as that statute provided:
 {¶ 17} "A furloughee or releasee other than a person who is released on parole * * * is considered to be in custody * * * and * * * may be prosecuted for the offense of escape." 146 Ohio Laws, Part VI, 11013.
 {¶ 18} On March 17, 1998, R.C. 2967.15(C)(2) was amended to remove the exception for parolees. 147 Ohio Laws, Part IV, 7539. See, generally, State v. Thompson, 102 Ohio St.3d 287,2004-Ohio-2946, 809 N.E.2d 1134.
 {¶ 19} In State v. Thompson, supra, however, the Supreme Court of Ohio held that a parolee whose underlying offense was committed prior to October 1, 1996, and who failed to report to his parole officer after March 17, 1998, may be prosecuted for escape under R.C. 2921.34. The Court stated:
 {¶ 20} "The date of Thompson's underlying crime is of no consequence to the resolution of this case. Rather, the focus is on the date of the parole violation, as it is a new criminal offense. Thompson's escape charge is based on conduct that occurred after the statutory amendments and is unrelated to the conduct that led to his prior conviction."
 {¶ 21} In accordance with the foregoing, the focus of our inquiry is not the date of conviction for the underlying offenses, but rather, is the date of the failure to report to his parole officer. Because that failure to report occurred after the March 1998 amendments to R.C. 2967.15, the trial court correctly denied defendant's motion to dismiss.
 {¶ 22} This assignment of error is without merit.
 {¶ 23} Defendant's second assignment of error states:
 {¶ 24} "The trial court erred by denying appellant's Crim.R. 29 motion because the state presented insufficient evidence to establish the elements of escape."
 {¶ 25} Within this assignment of error, defendant contends that the state failed to establish that he "purposely" broke detention in violation of R.C. 2921.34.
 {¶ 26} Crim.R. 29 provides:
 {¶ 27} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. A verdict will not be disturbed on appeal unless reasonable minds could not reach the conclusion reached by the trier of fact. State v.Jenks (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492.
 {¶ 28} The evidence in this matter established that immediately following his release from prison, defendant met with Gentry and Gentry informed him, in writing, that parole supervision is a type of "detention" and that if he absconded from such supervision, he could be charged with escape. Gentry also gave defendant a written list of the conditions of parole instructing him to keep his parole officer apprised of his residence and place of employment and advising him that if he absconded from supervision, he could be prosecuted for the crime of escape. In a written supervision plan, defendant was instructed to call Gentry on the first Tuesday of each month, to make an office visit on the third Tuesday of each month, and to complete a drug screening at this time. The state's evidence further demonstrated that defendant signed both documents and complied with the supervision plan through September 18, 2001, then failed to call Gentry or report to his office. Gentry went to the home of defendant's grandmother on November 19, 2001, and left a card for defendant, and also sent defendant letters instructing him to report to Gentry's office on December 5, 2001, December 11, 2001, and December 24, 2001, and received no response from him.
 {¶ 29} We conclude that this evidence if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. Reasonable minds could only conclude that defendant was informed of his reporting obligations, that he understood them and complied with them for a time, and that he was fully aware of the consequences for failing to report, but purposely disregarded the requirements of his supervision plan and failed to report to his parole officer after September 18, 2001. We therefore conclude that sufficient evidence supports the conviction.
 {¶ 30} The second assignment of error is without merit.
 {¶ 31} Defendant's third assignment of error states:
 {¶ 32} "The convictions are against the manifest weight of the evidence."
 {¶ 33} In reviewing a claim challenging the manifest weight of the evidence, we are directed as follows: "`the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541, quoting State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 34} Moreover, the power to reverse a judgment of conviction as against the manifest weight must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. State v. Martin, supra.
 {¶ 35} In this matter, the state presented evidence that defendant's residence had to be pre-approved by the Adult Parole Authority, and he was to notify his parole officer of any change in residence. Defendant was also informed in writing that failure to report could be prosecuted as escape. The state also established that it explained the supervision plan to defendant, that he initially complied with it, then completely disregarded both the phone call and office visit requirements of the plan, and that defendant did not respond to Gentry's letters, sent to the pre-approved residence, instructing him to report. Defendant did not rebut this evidence. Accordingly, we cannot conclude that the jury lost its way and created a manifest miscarriage of justice in convicting defendant of the offense of escape. The verdict is not against the manifest weight of the evidence. This assignment of error is without merit.
 {¶ 36} Defendant's fourth assignment of error states:
 {¶ 37} "The trial court failed to adequately advise appellant of post release control in violation of due process rights."
 {¶ 38} In this assignment of error, defendant asserts that post-release control did not become a valid part of his sentence because the trial court "only stated `five years post-release control' and did not further inform appellant of post-release control or the possible consequences of its violation." (Defendant's Brief at 13).
 {¶ 39} Pursuant to R.C. 2967.28(B) and (C), a trial court must inform the defendant at sentencing or at the time of a plea hearing that post-release control is part of the defendant's sentence. Woods v. Telb, 89 Ohio St.3d 504, 2000-Ohio-171,733 N.E.2d 1103, paragraph two of the syllabus. Further, pursuant to R.C. 2929.19(B)(3)(d), a trial court must inform the defendant at sentencing or at the time of a plea hearing "that he may be subject to a definite period of post-release control [and] the possibility of sanctions, including prison, available for violation of such controls." State v. Morrissey (Dec. 18, 2000), Cuyahoga App. No. 77179. That is, the trial court is required to inform a defendant of the salient features of post-release control as set forth in R.C. 2929.19(B). See Statev. Davis Cuyahoga App. No. 83033, 2004-Ohio-1908, that post-release control is to be part of his sentence, id., and that there is the possibility of sanctions, including prison, for a violation of such controls. See, also, State v. Shepard,
Cuyahoga App. No. 82158, 2003-Ohio-4938 (describing proper notification). In State v. Fisher, Cuyahoga App. No. 83098, 2004-Ohio-3123, the Court discussed the implications of a trial court's failure to correctly impose post-release control and stated:
 {¶ 40} "There is a difference of opinion, even within this district, on whether an erroneous imposition of post-release should be remanded for correction or whether post-release controls are forever foreclosed. See State v. Finger, Cuyahoga App. No. 80691, 2003-Ohio-402, discretionary appeal allowed99 Ohio St.3d 1470, 2003-Ohio-3801, 791 N.E.2d 985. The weight of authority within this district, Finger notwithstanding, is that errors in the imposition of post-release controls be remanded for resentencing. See State v. Jordan, Cuyahoga App. No. 80675, 2002-Ohio-4587, P15. * * * Therefore we see no constitutional impediment to a remand for resentencing in the event a court fails to advise the offender orally that post-release controls will be imposed."
 {¶ 41} In this instance, the trial court announced the following sentence:
 {¶ 42} "It will be the sentence of the court that you serve two years at the Lorain Correctional Institution, with credit for time served. After which you will serve five years of post-release control. The court leaves it up to the Adult Parole Authority to do whatever it will do on the parole violation." (Tr.194).
 {¶ 43} In accordance with the foregoing, we hold that the trial court did not adequately explain the salient features of post-release control, and failed to notify him of the consequences of a violation of that post-release control, as required by R.C. 2929.19(B). Accordingly, we remand the matter for resentencing in order that the court may inform defendant of the post-release control imposed and the consequences of a violation of that post-release control.
 {¶ 44} The fourth assignment of error is well-taken.
 {¶ 45} Defendant's conviction is affirmed, the sentence is vacated and the matter is remanded for resentencing.
It is ordered that appellee and appellant split the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, J., and Cooney, J., Concur.